IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONALD G. ABBEY,

        Plaintiff,

     v.

THE PENNSYLVANIA STATE
UNIVERSITY, a Pennsylvania
nonprofit corporation; and DOES 1-50,
inclusive,

        Defendants.

No. 4:24-CV-01953

(Chief Judge Brann)

## MEMORANDUM OPINION

### APRIL 16, 2025

## I.    BACKGROUND

On April 9, 2024, Donald G. Abbey commenced this action against The Pennsylvania State University ("Penn State" or "the University") and John Does 1 – 50 in the Superior Court of Orange County, California.[1] Penn State then removed this action to the United States District Court for the Central District of California on June 6, 2024, and the Central District of California subsequently transferred this case to the Middle District of Pennsylvania on November 13, 2024.[2] Pending before the Court is Penn State's Motion to Dismiss under Federal Rule of Civil Procedure

---

[1]    Notice of Removal, Doc. 1.
[2]    Notice of Removal, Doc. 1; Ord. Transferring Case, Doc. 26.

12(b)(6).[3] That motion is now ripe for disposition; for the reasons that follow, it is granted.

## II.    STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[4] and *Ashcroft v. Iqbal*,[5] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[7]

---

[3]    Motion to Dismiss ("MTD"), Doc. 30.
[4]    550 U.S. 544 (2007).
[5]    556 U.S. 662 (2009).
[6]    *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[7]    *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

## III.    FACTUAL BACKGROUND

### A.    The Parties

Donald G. Abbey enrolled at Penn State in 1966; during his time at the University, Abbey joined the Alpha Upsilon Chapter ("Alpha Upsilon") of the Beta Theta Pi fraternity.[8] Alpha Upsilon owns real property at 220 North Burrowes Road, State College, PA, "which served as the chapter's fraternity house (the "Beta House")."[9] Penn State is a nonprofit corporation organized in the State of Pennsylvania; Does 1 – 50 are "unknown to Abbey" and are therefore sued in this "fictitious designation[]."[10]

### B.    Abbey Loans $10 million to Alpha Upsilon

Abbey began to consider loaning Alpha Upsilon money to repair and improve the Beta House in 2004.[11] Before he did so, Abbey contacted Penn State executives Rodney Kirsch, Senior Vice President for Development and Alumni Relations, and Vicky Triponey, Vice President for Student Affairs on January 19, 2005.[12] Abbey wrote:

> How does the University remove the Chapter from the Campus, if [Alpha Upsilon] owns the land and building if it fails to keep at 2.5 grade point or adhere to any of the first level of standards, and why would anyone agree to give you that right. If the University was offering financial grants to the house and became equity investors in

---

[8]    Notice of Removal, Doc. 1, Compl., Ex. 1 ¶¶ 7-8.
[9]    *Id.* ¶ 10.
[10]   *Id.* ¶ 4.
[11]   *Id.* ¶ 11.
[12]   *Id.* ¶ 12.

the future, it might get the right to be repaid[], but to lose the ability to use the house is too severe for any benefits offered. You can't really think that anyone is going to sign such a document. It amounts to a quitclaim deed for right of occupancy unilaterally triggered by the University. This is a deal killer for me.[13]

Abbey further advised these executives that he would not "invest money in PSU's newest dorm" if "the chapter did sign over its rights to you."[14] In his view, "[t]his right of removal from Campus is aggressive beyond belief . . . ."[15]

On January 20, 2005, Triponey responded while copying Kirsch, Stuart Spisak, Penn State's Special Assistant to the Vice President for Student Affairs, and Brad Palmer, Alpha Upsilon's alumni representative. Triponey wrote:

Don't break any deals yet . . . We have no intention of taking over your house (we have no authority to do so!) Your interpretation is not at all what we intend or envison. We really are on the same page/heading in the same direction![16]

Triponey "further assured Abbey" on January 27, 2005 in an email copying Kirsch, Spisak, Palmer, and Stanley Latta, Penn State's Assistant Vice President for Housing, Food Services and Residence Life:

We are NOT proposing we have the right to take over a chapter's land or building . . . that is certainly not possible or desirable. But presently a chapter (the fraternal organization) does exist at the University at the invitation of the University and the IFC (or appropriate governing council) and if after a certain period of time and after an effort to help a chapter to correct their shortcomings relative to the minimum and reasonable expectations, they still fail to meet the minimums, we could

---

[13] *Id.* ¶ 12.
[14] *Id.* ¶ 13.
[15] *Id.*
[16] *Id.* ¶ 14.

and would rescind our invitation to that specific chapter (but you would still own the house) . . . but our intent here is to help all of the chapters live up to these basic expectations (our authority is over the organization not the property).[17]

That same day, Triponey sent an email to Palmer, with Latta and Spisak copied; this email was later forwarded to Abbey and said, in relevant part:

I did some checking on the terms of the deed with the houses on campus . . . and it is our understanding that the university has 1st right of refusal on the property should you (the fraternity/alumni/house corp.) CHOOSE to sell the property but we cannot force you to sell it. Even if – worst case scenario – your chapter was uninvited/told they could no longer exist at Penn State, we have no authority to take over your house.[18]

Based on these assurances, Abbey made a series of loans to Alpha Upsilon for the purpose of repairing and improving the Beta House, eventually totaling over $10 million.[19] On June 6, 2009, Abbey and Alpha Upsilon "entered into a written agreement related to past and future loans from Abbey ("the Funding Agreement")."[20] The Funding Agreement established "two categories of loans:" (1) Abbey Funds and (2) Home Improvement Funds. Abbey Funds are provided "to, for or on behalf of" Alpha Upsilon "from and including June 6, 2009."[21] House Improvement Funds were provided by Abbey to Alpha Upsilon for "the repair,

---

[17] *Id.* ¶ 15.
[18] *Id.* ¶ 16.
[19] *Id.* ¶ 17.
[20] *Id.* ¶ 19.
[21] *Id.* ¶ 21.

reconstruction and improvement of the [Beta House]' prior to June 6, 2009."[22] The Funding Agreement identified $7.7 million in House Improvement Funds.[23]

If any of the following events occur, Alpha Upsilon is to repay the Abbey Funds within sixty days: (1) Alpha Upsilon "decides not to follow the Men of Principle initiative or is determined to be out of compliance by the General Fraternity;" (2) Alpha Upsilon "permits, allows or otherwise fails to prevent excessive damage to the" Beta House; (3) the Beta House "is sold or otherwise acquired by any third party unless agreed to by Abbey, with repayment to Abbey limited to available net proceeds from the transaction;"[24] or (4) Alpha Upsilon "ceases to be a chapter of the General Fraternity and the [Beta House] is utilized for a purpose other than Alpha Upsilon of Beta Theta Pi unless agreed to by Abbey."[25] Triggering any of these conditions, along with a failure to repay Abbey for the Abbey Funds within sixty days, would result in a lien on the Beta House "in favor of Abbey until the Abbey Funds are repaid."[26]

If the Beta House "is sold or otherwise acquired by any third party unless agreed to by Abbey with repayment to Abbey limited to available net proceeds from the transaction" or Alpha Upsilon "ceases to be a chapter of the General Fraternity

---

[22]  *Id.* ¶ 22.
[23]  *Id.*
[24]  This section provided Alpha Upsilon the opportunity to avoid the repayment obligation if Abbey agreed to the sale or acquisition of the Beta House. *Id.* Any sale without his agreement would trigger the repayment obligation. *Id.*
[25]  *Id.* ¶ 23.
[26]  *Id.*

and the [Beta House] is utilized for a purpose other than Alpha Upsilon of Beta Theta Pi unless agreed to by Abbey," Alpha Upsilon has sixty days to repay the House Improvement Funds.[27] If the second event occurred, "meaning that Alpha Upsilon ceases to be a chapter of the General Fraternity and the [Beta House] is utilized for a purpose other than Alpha Upsilon of Beta Theta without Abbey's agreement" and Alpha Upsilon lacks sufficient funds for repayment, "a lien will be placed on the [Beta House] in favor of Abbey until the Abbey Funds are repaid."[28]

As evidenced by these provisions of the Funding Agreement, "[i]t was Abbey['s] and Alpha Upsilon's intention that the Property would serve as security for the performance of Alpha Upsilon's repayment obligation under the Funding Agreement."[29]

## C.    The Repayment Provisions are Triggered

On February 4, 2017, alcohol-related hazing activities resulted in the death of a student member of Alpha Upsilon.[30] The General Fraternity subsequently disbanded Alpha Upsilon on February 15, 2017, and the University revoked its recognition of Alpha Upsilon as a student organization on March 30, 2017.[31] Consequently, the Beta House could no longer be used to house Alpha Upsilon.[32]

---

[27]   *Id.* ¶ 25.
[28]   *Id.*
[29]   *Id.* ¶ 26.
[30]   *Id.* ¶ 27.
[31]   *Id.* ¶ 28.
[32]   *Id.* ¶ 29.

Abbey did not provide permission "to allow the Beta House to be used for any purpose other than housing Alpha Upsilon," and the General Fraternity concluded that the February 4, 2017 incident "violate[d] the General Fraternity's Men of Principle initiative."[33] "Alpha Upsilon has also failed to prevent excessive damage to the Property."[34]

Abbey proceeded to sue Alpha Upsilon on March 10, 2017 given the occurrences of these events; "Alpha Upsilon did not repay the Abbey Funds or the House Improvement Funds in connection" with this suit.[35] Nor does Alpha Upsilon "have sufficient funds to repay Abbey within" the sixty day window.[36] As a result, "the Funding Agreement requires that a lien be placed on the Beta House in favor of Abbey until the Abbey Funds and the House Improvement Funds are repaid."[37]

## D.    The Court Ordered Sale of the Beta House

On December 21, 2021, the Court of Common Pleas of Centre County, Pennsylvania "ordered that ownership of the Beta House shall be transferred to Penn State in accordance with the following" ("the 2021 Verdict"):

> "2. Once this verdict becomes final, the parties shall have six (6) months to attempt to negotiate a transfer price for the subject property. For these purposes, Defendant shall afford Plaintiff, and any necessary designee of Plaintiff, reasonable access to the subject premises for purposes of appraising the fair market value of the property. The parties

---

[33]   *Id.* ¶¶ 30-31.
[34]   *Id.* ¶ 32.
[35]   *Id.* ¶ 33-34.
[36]   *Id.* ¶ 34.
[37]   *Id.*

may waive the six (6) month period for negotiation by written agreement and proceed as they may agree, or in the absence of an agreement as to how to proceed, as set forth hereinafter.

3. Following the expiration of the period described in paragraph 2 above, whether by the lapse of time or upon the agreement of the parties, the parties shall have two (2) months to agree upon the number of and identity of the members of a Board of Arbitrators to determine the transfer price of the subject property.

4. If an impasse should arise regarding the number of and/or identity of arbitrators, either party may file a Praecipe for a hearing before the Court where the Court will set the number of arbitrators and/or determine the identity of said arbitrators, as may be necessary. In the event of a future hearing to set the identities of the members of a Board of Arbitrators, each party shall nominate two (2) arbitrators by filing the same with the Prothonotary of Centre County at least ten (10) days before the scheduled hearing and serve a copy of said filing on the Court."[38]

Not only does this trigger "an additional [repayment] basis" under the Funding Agreement, but Abbey contends the 2021 Verdict also "gave rise to the claims alleged . . . by informing" him that "Penn State's prior representations to him were false."[39]

## IV.    DISCUSSION

### A.    Statute of Limitations

The Third Circuit allows "a limitations defense to be raised by a motion under Rule 12(b)(6) 'only if the time alleged in the statement of a claim shows that the

---

[38]  *Id.* ¶ 35.
[39]  *Id.* ¶¶ 37-38.

cause of action has not been brought within the statute of limitations.'"[40] "However, '[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).'"[41] When deciding a motion to dismiss, I "generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record."[42] But if a "document [is] integral to or explicitly relied upon in the complaint," the Court may consider it "without converting the motion to dismiss into one for summary judgment."[43]

Penn State argues that Count I (Fraudulent Misrepresentation), Count II (Negligent Misrepresentation), Count IV (Unjust Enrichment), Count V (Promissory Estoppel), and Count VI (Declaratory Relief) are untimely under their respective limitations periods. To make this argument, Penn State relies on Abbey's initial 2017 Complaint and an April 11, 2019 joint motion in the case of *Abbey v. Alpha Upsilon*.

Federal Rule of Evidence 201(b) allows the Court "to take judicial notice of facts that are not subject to reasonable dispute in that they are either: (1) generally known within the territorial jurisdiction of the court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

---

[40] *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002)).

[41] *Id.*

[42] *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1996 (3d Cir. 1993).

[43] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

questioned."[44] Considering these "matters of public record" does not improperly convert this motion into one for summary judgment.[45] The Court "may take judicial notice of other legal proceedings and documents filed therein, though not for their truth, in considering a motion to dismiss."[46] As a result, the Court is able to take judicial notice of both the 2017 Complaint and its accompanying exhibits and the 2019 joint motion. In doing so, I remain cognizant that "a court that examines [evidence from] a prior proceeding to find facts converts a motion to dismiss into a motion for summary judgment."[47] Instead of considering these filings "for the truth of the facts recited therein," I use them to establish "the existence of the" document.[48] Given this limitation, it is inappropriate at this juncture to conclude that Abbey's claims are time barred on this basis. To do so would require the Court to improperly infer facts from the judicially noticed documents.[49]

Be that as it may, Count I (Fraudulent Misrepresentation) and Count II (Negligent Misrepresentation) are still untimely. Abbey specifically alleged that the

---

[44] *In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 390 (D.N.J. 2010) (quoting *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002)).

[45] *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 190 n.3 (3d Cir. 1999). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007).

[46] *Rigollet v. Kassoff*, 570 F. Supp. 3d 246, 248 n.1 (D.N.J. 2021) (citing *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999)).

[47] *Kauffman v. Moss*, 420 F.2d 1270, 1274-75 (3d Cir. 1970).

[48] *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999).

[49] Nor can it be said that these documents are "integral or explicitly relied upon in the Complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). These documents are merely "explicitly cited;" they do not form the basis of the claim. *Id.* (quoting *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993)).

December 21, 2021 Verdict "gave rise to the claims alleged herein by informing Abbey that Penn State's prior representations to him were false."[50] As Plaintiff filed this Complaint on April 9, 2024, the two-year statute of limitations has run on Counts I and II.[51] Abbey's attempt to argue otherwise in his briefing cannot overcome these specific allegations.[52] Accordingly, Counts I and II will be dismissed, but Plaintiff will be provided leave to amend to address this deficiency, if that is at all possible.

### B.    Purported Creditor

The University also asserts that Plaintiff had constructive notice of the Deed "as early as 2004" due to his status as "a purported creditor."[53] In making this proposition, Penn State relied upon the Pennsylvania Supreme Court's 1869 decision in *Maul v. Rider*,[54] which observed that recording a deed provides "constructive notice only to those who are bound to search for it: thus subsequent purchasers and mortgagees, and perhaps all others who deal with or on the credit of the title, in the

---

[50]    Notice of Removal, Doc. 1, Compl., Ex. 1 ¶ 38.

[51]    BIS, Doc. 36 at 11.

[52]    Abbey argues at length that the discovery rule and Penn State's fraudulent concealment toll the applicable statute of limitations. Neither argument is persuasive under the allegations of the Complaint for these two counts. Abbey explicitly indicated that the 2021 Verdict "gave rise to the claims" he brought, thus displaying his awareness of his claims such that the discovery rule and fraudulent concealment are not applicable. I also note that Abbey asks the Court to consider the April 19, 2022 Judgment and October 18, 2023 Order in the case between Penn State and Alpha Upsilon. Even if I were to take judicial notice of these documents at this time, I may not consider their contents. Instead, I conclude it is more appropriate to grant the motion to dismiss as to Count I and II on this basis and allow Plaintiff to replead his allegations to address this issue.

[53]    BIS, Doc. 36 at 12.

[54]    *Maul v. Rider*, 59 Pa. 167 (1869).

line of which the recorded deed belongs."[55] As will be discussed in greater length below, the Complaint merely establishes Abbey's ability to become a creditor. Given that the University fails to explain how this line of reasoning extends to all possible future creditors, I set aside this argument in favor of addressing the inescapable issue in Plaintiff's Complaint: his claim to damages.

### C.    Abbey's Purported Damages[56]

Defendant correctly contends that dismissal is warranted as Abbey cannot show that he has suffered damages under the allegations of the Complaint for two reasons.

First, Plaintiff has failed to allege that he is a lienholder. Abbey identified that it was the fraternity's "intention that the Property would serve as security for the performance of Alpha Upsilon's repayment obligation under the Funding Agreement."[57] Abbey also described several events that triggered Alpha Upsilon's repayment obligations and its inability to repay the entirety of the Abbey Funds and House Improvement Funds.[58] He then simply observes that "the Funding Agreement requires that a lien be placed on the Beta House in favor of Abbey" and that he initiated a suit against Alpha Upsilon in 2017 in the Court of Common Pleas of

---

[55] *Id.* at 171.
[56] This section applies to all of Plaintiff's claims except the declaratory relief cause of action.
[57] Notice of Removal, Doc. 1, Compl., Ex. 1 ¶ 26.
[58] *Id.* ¶¶ 26-34.

Centre County, Pennsylvania.[59] Plaintiff then improperly asks the Court to infer that he has a security interest in the Beta House, not merely an intent to establish one.

Second, Abbey has failed to allege how the sale damages any purported lien he may have. While he contends that "Penn State now seeks to force a discounted sale of the property and wipe out Abbey's security interest therein,"[60] his allegations describing the December 2021 Verdict contradict that assertion. In ordering the transfer of the Beta House to Penn State, the Court of Common Pleas of Centre County provided Alpha Upsilon and the University six months "to attempt to negotiate a transfer price" and that "reasonable access" should be provided to allow for the appraisal of the fair market value of the Beta House.[61] If such negotiations fail, Penn State and Alpha Upsilon must then submit the matter to arbitration "to determine the transfer price of" the Beta House.[62]

The process established by the Court of Common Pleas appears to ensure that Penn State will pay a fair price for the Beta House. Plaintiff failed to discuss at all how such a sale would damage him beyond asserting that the December 2021 Verdict "does not state or require that Penn State pay *Abbey* 'fair market value' for the Beta House or his improvements thereon."[63] Although correct, this observation

---

[59]   *Id.*
[60]   *Id.* ¶ 1.
[61]   *Id.* ¶ 35.
[62]   *Id.*
[63]   BIO, Doc. 37 at 12.

alone does not serve to establish damages. Without more information, it is unclear why any lien Abbey held would not attach to the proceeds of the sale or whether the sale would satisfy the full amount of the lien. Given these issues, the Court agrees that Plaintiff has failed to plead he will suffer any damages.[64] But leave to amend will be provided to allow Abbey to sufficiently detail his alleged damages.

### D.    Declaratory Relief

The Court has the power "to declare rights, status, and other legal relations whether or not further relief is or could be claimed."[65] "The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding, but . . . the existence of an alternative remedy shall not be a ground for refusal to proceed . . . ."[66] But "a plaintiff in a declaratory judgment action must demonstrate that an actual controversy exists."[67]

Plaintiff identified three controversies in his Complaint: (1) "[w]hether Penn State is precluded from purchasing the Beta House in light of Abbey's lien on the Beta House;" (2) "[w]hether Penn State is precluded from purchasing the Beta House in light of Penn State's wrongful conduct alleged herein; and" (3) "[i]f Penn State is

---

[64]   Due to this conclusion, I do not comment on the remaining substantive arguments put forth by the parties.
[65]   42 Pa.C.S.A. § 7532.
[66]   42 Pa.C.S.A. § 7537.
[67]   *Tri-State Auto Auction, Inc. v. Gleba, Inc.*, 257 A.3d 172, 184 (Pa. Super. 2021).

allowed to proceed with the purchase of the Beta House, whether Abbey has a right to participate in: (i) the negotiation of the transfer price for the Beta House; (ii) the process of deciding the number and identity of the members of a Board of Arbitrators to determine the transfer price of the Beta House; and (iii) the eventual arbitration between Penn State and Alpha Upsilon regarding the transfer price for the Beta House."[68]

Plaintiff's controversies are hampered by the Court's inability to conclude that Abbey has a lien on the Beta House, as discussed above. Given this, it appears that Abbey lacks any basis to prevent the sale of the Beta House or to become involved in the sale between Alpha Upsilon and Penn State. Instead, under the allegations of the Complaint, Abbey has seemingly only a breach of contract claim against Alpha Upsilon. Without any allegations supporting these controversies, the Court agrees that dismissal is warranted as to this cause of action.[69]

## V.    CONCLUSION

Defendant's motion to dismiss pursuant to Rule 12(b)(6) is granted As the Third Circuit instructs that leave to amend should be "freely given,"[70] Plaintiff will

---

[68]    Notice of Removal, Doc. 1, Compl., Ex. 1 ¶ 68.
[69]    Defendant has raised a compelling argument that the third purported controversy is improperly before this Court. Due to my conclusion that Plaintiff is unable to proceed with this cause of action under the current allegations in the Complaint, I need not reach this issue.
[70]    *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (quoting FED. R. CIV. P. 15(a)).

be given fourteen days from today's date to file an amended complaint. If no

amended complaint is filed, the action will be subject to dismissal with prejudice.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge